UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARVIN WASHINGTON, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-00865-JMS-MJD |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS; | ) | |
| AMERICAN FEDERATION OF STATE, | ) | |
| COUNTY, AND MUNICIPAL EMPLOYEES, | ) | |
| *Defendants.* | ) | |
| | ) | |

## ORDER

Presently before the Court are Defendant Indianapolis Public School ("IPS")'s and American Federation of State, County and Municipal Employees ("AFSCME")'s separately filed Motions to Dismiss, or in the Alternative, for Summary Judgment, [dkts. 13, 18], which the Court **GRANTS** for the following reasons.

### I.
#### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro.

56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The following facts are undisputed. Mr. Washington was terminated in June 2010 from his position as foodservice driver for IPS following a report that he had brought a prostitute into an IPS elementary school and had sex with her. [Dkt. 14 at 1.] After an investigation into the matter, IPS was unable to determine whether that report was entirely accurate, but Mr. Washington admitted to IPS School Police Detective Sergeant Bridget Lewis that he made an unauthorized stop at an elementary school, left an IPS vehicle running and unattended, and allowed an unauthorized woman to enter an IPS school building in the middle of the night. [*Id*; dkt. 15-3 at 19-22.]

According to Sgt. Lewis's report following a review of video surveillance footing from the IPS Elementary School #51 on the night of May 4-5, 2010, Mr. Washington was recorded on camera entering the elementary school with an unknown woman and walking with her down a corridor leading to the custodial staff room. [Dkt. 14 at 6.] The two remained off-camera for a few minutes, and when they left the school, the security footage showed Mr. Washington throw something in a dumpster and appear to fix his pants before leaving the premises. [*Id*; dkt. 15-3 at 35.]

Director of Foodservice Velda Hammon concluded that Washington exhibited poor judgment making an unauthorized stop, leaving his truck running and unattended, and allowing an unauthorized person into a secure IPS elementary school in the middle of the night. [Dkt. 15-4 at 4.] Ms. Hamman recommended to IPS Human Resources Representative Shalon Dabney that IPS terminate Mr. Washington's employment. [*Id*.] Mr. Dabney held an interview with Mr. Dabney, during which Mr. Washington denied having sex with a prostitute but did not deny entering School #51, leaving his truck unattended, or allowing an unauthorized person into School #51. [Dkt. 15-1 at 4.] Taking note that Mr. Washington "had been disciplined before for

poor decision-making concerning IPS property," [*id* at 3], Mr. Dabney subsequently informed Mr. Washington by letter that he would recommend to the IPS Board of School Commisioners ("Board) that Mr. Washington's employment be terminated. [*Id* at 4.] In June 2010, IPS sent Mr. Washington a letter informing him that the Board had accepted Mr. Dabney's recommendation and terminated his employment. [*Id*.]

## III.
### DISCUSSION

Mr. Washington has sued IPS under Title VII for race discrimination and retaliation (Count I). [Dkt. 1.] He has also brought state-law claims against IPS for breach of contract (Count II), and against AFSCME for breach of contract, misrepresentation of a union member (Count III), and misappropriation of union dues (Count IV).[1] [*Id*.]

### A.  Mr. Washington's Race Discrimination and Retaliation Claims

Title VII of the Civil Rights Act of 1964 forbids an employer from discriminating against an employee based upon race and from retaliating against an employee who opposes an unlawful employment practice. 42 U.S.C. §§ 2000(e)(2) *et seq*. Mr. Washington claims that Defendants discriminated against him and retaliated against him in violation of Title VII. [Dkt. 1 at ¶¶ 9, 39.]

Mr. Washington can attempt to prove race discrimination or retaliation directly or indirectly. To prove either claim directly, Mr. Washington must show that discriminatory conduct was related directly to the employment decision in question. *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Here, Mr. Washington presents no direct evidence of race discrimination or retaliation, nor does he contend otherwise. Moreover,

---

[1] Mr. Washington has also listed as Count V his request for a trial by jury. [*Id*.]

he relies on the same alleged conduct to prove both discrimination and retaliation. [*See* dkt. 1.] Therefore, he must prove his race discrimination and retaliation claims using the indirect method. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

To establish a prima facie case of race discrimination using the indirect method, an employee must demonstrate: (1) he belongs to a protected class; (2) his performance met his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly-situated employees not in his protected class received more favorable treatment. *See Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009); *Williams v. Shinseki*, 373 Fed. Appx. 611, 615 (7th Cir. Ill. 2010). His retaliation claim requires the same evidence, except that instead of proving membership in a protected class, he must demonstrate that he engaged in a statutorily protected activity. *Williams*, 373 Fed. Appx. at 615. The parties agree that Mr. Washington is part of a protected class as an African-American, [dkt. 1 at 7], engaged in statutorily protected activities by filing grievances with AFSCME [*id* at 4-5],[2] and suffered an adverse employment action in the form of termination.

If the employee establishes a prima facie case, the burden shifts to the employer to present a legitimate non-discriminatory (or retaliatory) reason for the adverse employment action. *See Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). If the employer offers such an explanation, the burden shifts back to the employee to show that the given reason was a mere pretext for unlawful discrimination or retaliation. *See Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008).

---

[2] In his Complaint, Mr. Washington has included a litany of purported instances of discrimination and retaliation. [*See* dkt. 1.] Besides his claim of wrongful termination, however, none of those charges are before this Court, however, as he has not included them in a timely-filed EEOC charge. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("[A] title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge.").

IPS has moved for summary judgment on Mr. Washington's Title VII claim, [dkt. 13], and without separate briefing on the merits, AFSCME has joined IPS in that motion, [dkts. 18, 27.] The parties have also moved the Court to dismiss for lack of subject-matter jurisdiction Mr. Washington's remaining, non-federal claims following the resolution of his Title VII claim. [Dkt. 27 at 3.]

### 1. Was Mr. Washington Meeting IPS' Legitimate Expectations?

In support of summary judgment, Defendants first argue that Mr. Washington has failed to establish a prima facie case for discrimination because he was not performing to IPS' legitimate expectations at the time of his discharge. [Dkt. 14 at 19.] Specifically, IPS argues that because the undisputed evidence establishes that Mr. Washington "made an unauthorized stop, left his truck running and unattended, and allowed an unauthorized person into an IPS building in the middle of the night," IPS decisionmakers found that Mr. Washington "exhibited poor judgment and lacked the judgment required to be entrusted with IPS property." [Dkts. 14 at 19; 15-1 ¶¶ 9-11; 15-4 at ¶¶ 12-15.]

Mr. Washington does not directly address the issue of whether he was meeting IPS' legitimate expectations. Instead, he vaguely argues that there is a factual dispute about whether he was fired for discriminatory reasons because "[t]here is evidence that IPS dealt differently than they [sic] had before when similar circumstances had arisen." [Dkt. 25 at 6.] Even with a liberal construction of Mr. Washington's *pro se* brief, the Court does not find that Mr. Washington has raised a material issue of fact about whether he met IPS' legitimate expectations. *See Johnson*, 325 F.3d at 901 (holding that conclusory statements not backed by admissible evidence are insufficient to create an issue of material fact on summary judgment). Indeed, and as noted, the fact that Mr. Washington engaged in such conduct is undisputed.

Although Mr. Washington may disagree with IPS' conclusion that he was not performing satisfactorily, his own subjective assessment of his performance is not evidence that he met performance expectations or that his evaluation was untrue. *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 865-66 (7th Cir. 1996); *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). *See also Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 398 (7th Cir. 1998) ("Mr. Adreani attempts to raise issues of material fact based on his own perceptions of his performance. However, it is the perception of the decisionmaker, not the employee, that is relevant.")

Based on the record evidence, the Court finds that Mr. Washington has not submitted admissible evidence to contradict IPS' contention that Mr. Washington was not meeting IPS' legitimate expectations. Therefore, Mr. Washington cannot make out a prima facie case for discrimination or retaliation. *See, e.g., Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003) ("A plaintiff does not reach the pretext stage [of *McDonnell Douglas*] . . . unless she first establishes a prima facie case of discrimination."). Accordingly, Defendants are entitled to summary judgment on the federal claims asserting race discrimination and retaliation.

### 2. Can Mr. Washington Show that Similarly Situated Colleagues from outside the Protected Class Treated More Favorably than He Was?

A plaintiff making a showing of discrimination or retaliation must show that similarly situated colleagues outside the protected class were treated more favorably than he was. *See Antonetti*, 563 F.3d at 591. The similarly-situated requirement is crucial, because "without it a plaintiff would only have to point to one . . . employee who was treated better than [him] . . . (which) would be meaningless, especially with respect to large corporations . . . ." *Radue v. Kimberly-Clark*, 219 F.3d 612, 619 (7th Cir. 2000). The Seventh Circuit has recently described the similarly-situated inquiry as "flexible, common-sense, and factual ..., ask[ing], 'essentially,

are there enough common features between the individuals to allow a meaningful comparison." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (internal citation and quotation marks omitted). Sufficient commonalities must exist between Mr. Washington and any would-be comparators "to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination. *Id*.

Here, assuming Mr. Washington could show that he was meeting the IPS' legitimate expectations—which he cannot—the only adverse employment action Mr. Washington demonstrates is his allegedly wrongful termination. [Dkt. 41-1 at 4-5.] Thus, for his claim to survive, he would have to show that similarly situated employees were not terminated. *See Radue*, 219 F.3d at 619. Mr. Washington has presented no admissible evidence to support this claim.

The only potential comparator evidence that the Court can discern are Mr. Washington's assertions in his statement of material facts regarding the actions of fellow IPS Foodservice Drivers Robert Shingleton and Doyle Bledsoe. Specifically, Mr. Washington contends that in 2009, Mr. Shingleton "did not respond to dispatch" and was not disciplined, and "was reprimanded" for delivering incorrect basket to schools, which according to Mr. Washington "would have been grounds for at least suspension." [Dkt. 25 at 2.] Mr. Washington also claims that Mr. Bledsoe was a "no call; no show," and attached a work calendar to support his contention. [*Id*.]

Neither Mr. Shingleton nor Mr. Bledsoe, even under the flexible standard recently iterated by the Seventh Circuit, is a proper comparator for Mr. Washington because the conduct in which they are alleged to have engaged is easily distinguishable from Mr. Washington's conduct. *See Coleman*, 667 F.3d at 851 ("To determine whether two employees have engaged in

similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness.") (internal citation and quotation marks omitted). Failing to respond to dispatch and missing a scheduled shift are behaviors of a different nature and seriousness than those which Mr. Washington admits to having committed: namely, making an unauthorized stop at an elementary school that was not part of his assigned route, leaving an IPS vehicle running and unattended, and allowing an unauthorized person to enter a secure IPS school building in the middle of the night. Neither Mr. Shingleton's nor Mr. Bledsoe's attendance issues would support a conclusion that either of them "exhibited poor judgment and lacked the judgment required to be entrusted with IPS property," [dkts. 14 at 19; 15-1 ¶¶ 9-11; 15-4 at ¶¶ 12-15], the basis on which the IPS decisionmakers terminated Mr. Washington's termination, [*id*].

Without any evidence of a comparator who was not terminated after committing a similar violation, the Court cannot find that a similarly situated IPS employee was treated more favorably than Mr. Washington. Therefore, even if he could show that he was meeting IPS' legitimate expectations, Mr. Washington would still not be able to establish a prima facie case of race discrimination or retaliation based on his termination. *See Lim v. Trustees of Indiana University*, 297 F.3d 575, 581 (7th Cir. 2002) (plaintiff failed to meet the similarly situated requirement and, therefore, Seventh Circuit affirmed the district court's granting of summary judgment without reaching the issue of pretext).

### 3. Can Mr. Washington Show that IPS' Proffered Legitimate Reason for Firing Him was Pretextual?

If Mr. Washington could establish a prima facie case, which he cannot here, the burden shifts to the employer to present a legitimate non-discriminatory reason for the adverse employment action. *See Everroad v. Scott Truck Systems, Inc*., 604 F.3d 471, 477 (7th Cir. 2010). The Seventh Circuit has held that poor work performance is a legitimate reason for

termination. *See, e.g., id.* Because IPS has offered a legitimate explanation for firing Mr. Washington – that his misconduct demonstrated that he lacked the requisite judgment to meet its legitimate expectations – the burden shifts back to Mr. Washington to show that the given reason was a pretext for unlawful discrimination. *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008).

"Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" *See Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). "[T]o meet this burden [Mr. Washington] must present evidence to suggest not that [IPS] was mistaken in [terminating him] but that it was lying in order to cover up the true reason, [his race or protected conduct]." *See Vanasco v. National-Louis Univ.*, 137 F.3d 962, 966 (7th Cir. 1998); *see also Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("Although indirect proof of pretext is permissible, we must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.") The Court is "not a super-personnel department charged with determining best business practices, particularly when the work involves potential danger." *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999).

Here, Mr. Washington does not offer any evidence to indicate that that IPS, or any decisionmakers at issue, lied about his work performance as pretext for discrimination. Despite Mr. Washington's disagreement with IPS' assessment of his performance and subsequent decision to terminate his employment, Mr. Washington's own subjective assessment of his performance is not evidence that he met performance expectations or that his evaluation was untrue. *Denisi,* 99 F.3d at 865-66; *Fortier*, 161 F.3d at 1114. It is certainly not evidence that IPS lied as pretext for discrimination or retaliation, *Little*, 369 F.3d at 1012.

Furthermore, the relevant inquiry is not whether IPS was correct in its assessment of Mr. Washington's performance, but rather whether IPS honestly believed that his behavior performance warranted termination. *See McCoy v. WGN Continental Broadcasting Co*., 957 F.2d 368, 373 (7th Cir. 1992) ("Thus, the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather it address the issue of whether the employer honestly believes in the reasons it offers."). Therefore, although Mr. Washington may disagree with IPS' assessment that he lacks proper judgment, his disagreement does not constitute a rebuttal to its proffered explanation for his discharge.

By failing to introduce admissible evidence to rebut IPS' proffered explanation of its termination decision, Mr. Washington has failed to defeat IPS' motion for summary judgment on his Title VII claims. Therefore, even if Mr. Washington could make out a prima facie showing for discrimination and retaliation, his claims would still fail as a matter of law. Accordingly, the Court **GRANTS** summary judgment for the IPS on Mr. Washington's claims for discrimination and retaliation under Title VII.

Even liberally construing Mr. Washington's Complaint, the Court does not find that he has articulated a federal discrimination claim against AFSCME, and his brief in opposition to the parties' summary judgment motions contains arguments for a Title VII claim against only IPS. [*See* dkt. 25.] Therefore, the Court also **GRANTS** AFSCME's motion for summary judgment with respect to any Title VII claim against it. [Dkt. 18.]

### B. Mr. Washington's Supplemental State-Law Claims

Within this Order, the Court has dismissed all of Mr. Washington's federal claims. Now that this action involves purely state claims, the Court must decide whether to continue presiding over it or dismiss the remaining claims without prejudice.

"As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (citations omitted). The Court may retain jurisdiction, however, "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Id.* (citations omitted). Ultimately, the determination is a discretionary one based on the balance of those factors. *Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994).

In the present case, only ten months have passed since Mr. Washington filed his Complaint, and it cannot be said that substantial judicial resources have already been expended on his state claims. The case has proceeded with minimal judicial involvement: the assigned magistrate judge granted IPS' motion for an extension of time to respond to Mr. Washington's Complaint, [dkt. 10], and its motion to seal exhibits to its designation of evidence, [dkt. 21].

Furthermore, after reviewing Mr. Washington's Complaint and brief opposing dismissal of its claims against AFSMCE, the Court cannot say that it is clearly apparent at this time how his state-law claims are to be decided. Given that the only remaining claims at issue are purely issues of state law, and it is not yet apparent how the state claims are to be decided, this case is more properly adjudicated in state court. *Medellin v. Texas*, 552 U.S. 491, 561 (2008); *Williams*, 509 F.3d at 502. Likewise, given that this case has had a relatively short federal lifespan, the Court finds that little injustice will result from beginning the process anew in state court. *Timm*, 32 F.3d at 277. The Court thus finds it appropriate to relinquish jurisdiction over the state claims presently at issue in this case.

## IV.
### CONCLUSION

Mr. Washington has not established a prima facie case for discrimination or retaliation under federal law. Furthermore, even if he had established a prima facie case, he has not offered admissible evidence to rebut IPS' proffered legitimate reason for terminating his employment. Therefore, the Court **GRANTS** Defendants' Motions to Dismiss or in the Alternative, for Summary Judgment. [Dkts. 13, 18.] The Court finds as a matter of law for IPS on Mr. Washington's Title VII claims (Count I), and the Court relinquishes its supplemental jurisdiction and **DISMISSES WITHOUT PREJUDICE** Mr. Washington's state-law claims (Counts II-V). [Dkt. 1.] Judgment will issue accordingly.

04/04/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana